Cukia, per Eaele, J.
If this were an indictment for murder at common law, a verdict of manslaughter would be good; or a count for manslaughter might have been joined. The form is the same, except that in a count for manslaughter, the words “ murder,” and “ malice aforethought ” are omitted. When on a general count for murder, the jury find manslaughter, they only negative the malice. It is said, and with good reason, by Mr. East, in his Pleas of the *433 Crown — “In most cases where justice requires a man to be put on his trial for'killing another, it is usual and proper to charge him in the indictment for murder; because in many instances it is a complicated question, and no injury can thereby happen to the individual, at all comparable to the evil of a lax administration of justice in this respect, for the verdict and judgment will still be adapted to the nature of the offence.” The general rule is, when an accusation includes an offence of inferior degree, the jury may discharge the defendant of the higher crime and convict him of the less atrocious. But it seems to be supposed, that on indictment for felony, the defendant cannot be convicted of a misdemeanor: and for the same reason, a count for misdemeanor cannot be joined with a count for felony. The reason given by Mr. Chitty, both in regard to the finding and the joinder, is, that the defendant would thereby lose the benefit of having a copy of the indictment, a special jury, and of making his full defence by counsel. — Chit. Crim. Law, 252, 639. And such was the decision in Westbeer’s case, Sir. 1133. Before, the law had been otherwise ; as in Seeser’s case, Cro. Jac. 497, where it was held, on an indictment for felony in entering a house and stealing 18 pence, if the jury find a special verdict that the money was obtained by playing with false dice, the court may give judgment for the trespass and misdemeanor. And in Holmes’ case, cited in Kelyng, 29, where he was indicted for, “ that being possessed of a house in London, he did feloniously set on fire his own house and burnt it, with intent to burn the houses of other men near adjoining;” and being found guilty, the court doubted whether it was felony or no: and on advising, agreed it was not; but gave judgment against him as for a trespass. In Westbeer’s case, the court said, “the judges (in those cases) appear to be transported with a zeal too far.” The reason given, why on an indictment for felony the jury may not find for misdemeanor, and why counts for each -may not be joined, is not true in this State. While in England, (4 Blk. Com. 555,) persons on trial for misdemeanor, have privileges that are denied to persons charged with felony, as a copy of the indictment and full defence by counsel; here it is otherwise, and by act, 2 Brev. Dig. 188, these privileges are extended *434 to all persons indicted for felony or other capital crime. There is, in fact, the same reason for allowing this practice here, that is given, why on an .indictment for petit treason in England, one may be convicted of murder; that he has a larger number of peremptory challenges, and thereby enjoys a higher benefit instead of losing anyr-privilege. In the case we are supposing, the defendant would gain by being indicted for felony, the whole number of challenges; which would more than compensate him for losing the privilege of an imparlance one term. We conclude then, that here, one indicted for felony, may be convicted of a misdemeanor, which makes it unnecessary to consider whether killing a slave in sudden heat and passion, be a felony or a misdemeanor; or to consider the grave question raised in argument, whether before the act of 1740, the homicide of slaves stood upon the same footing as that of white men at common law.
The next inquiry needful to be made, is whether under the act of 1821, the murder of a slave includes within it the inferior oifence of killing in sudden heat and passion, to the same extent, and for the same reason, that murder at common law includes manslaughter. In Cheatwood’s case, 2 Hill. 459, which was tried before me on the circuit, I had instructed the jury, “that cases arising under the act, were to be determined according to the principles and rules of the common law, and that I could admit no other distinction between the killing of white men and that of negro slaves, than this, that in the latter case a smaller degree of provocation would have the effect of extenuating or excusing, as the case might be.” This proposition received the confirmation of the Court of Appeals, who held that “the purpose of the act was to make the killing of a slave, the same offence as the murder of a freeman, at common law; that the words used in the first clause of the act, and particularly the word “deliberately,” were used in contra-distinction to the terms of the second clause, which provides for the offence of killing in sudden heat and passion; that those words, “ sudden heat and passion,” are technical words of the common law, to describe the offence of manslaughter, and to the common law we must resort for their definition.” Mr. Justice Colcock, be *435 fore, in Rain’s case, 3 M’Cord. 533, had said, “murder isa technical word of the common law, and when used by the legislature must receive its technical construction.” The words “killing in sudden heat and passion,” are entirely synonymous with “ killing in sudden heat of blood, and transport of passion,” which are usually employed in the books to define manslaughter. In Rains’ case it was decided, that in indictments under either section, it was indispensable to describe the offence with all its circumstances, constituting the manner of killing, the Weapon, wounds and the like, with the same minuteness as in indictments for homicide at common law. On the trial, upon the general charge of murder, the same proof must be made as on the other charge of killing in heat and passion, with the additional facts of malice and deliberation. The defendant cannot be misled, for it is the same killing that forms the body of the charge in either case ; and he is equally apprised of the nature of it, so as to bring forward his proof. And the verdict of “killing in sudden heat and passion,” establishes that there was a killing, that although there was no malice, the.re was also no sufficient excuse; just as a verdict of manslaughter has the same effect in indictments for murder. It negatives the malice only. We conclude, therefore, that under the act, the greater'offence includes the lesser, to the same extent and for the same reason, that murder includes manslaughter at the common law. Rains’ case was referred to in argument, as having decided that under the act, a verdict of manslaughter would be bad; and it was so ruled. The point was not necessary to be decided, as the indictment was held defective and a new trial was granted on another ground. But I do not regard that decision as affecting the present question. The reason assigned there, was that the punishment under the act is different from that of manslaughter at common law ; and as judgment could not be given for that, none could be given for killing in sudden heat and passion. That may be admitted without overturning our conclusion. It is supposed, however, to be at variance with the rule of criminal pleading, which requires statutory offences to be set forth precisely in the words of the act. In point of fact, the charge of murder is set forth sufficiently. The true ob *436 jection is, that ¡tilling in sudden heat and passion, is not laid in the indictment, and therefore the defendant cannot be convicted of it. If this objection had been made on the trial, the answer would have been, “the defendant is on his trial for killing a slave, with malice, the degree of guilt depends on the proof — and the offence will be established by the verdict.” The offences are in fact, only different degrees of guilt arising out of the same killing, and the verdict having acquitted of the murder, may be considered as inserting the words necessary to constitute the inferior offence, and thus makes the record a bar to another prosecution; or, it may be regarded as a special verdict, which the jury have the same right to find in criminal as in civil cases, and the degree of guilt is a conclusion of law, from the facts found. We think there is the same reason for allowing this course in statutory offences, as in offences at common law, where both the higher and lower are created by statute. If only the lower were created by statute, and the indictment concluded at common law, there might be an objection for want of the words, contra formam statuti. That does not lie here.
It is supposed that the offence under the act of 1740, of killing by undue correction, still exists, although Mr. Justice Colcock thought otherwise in Rains’ case; and that if a case of that kind were made out on the trial of the indictment for murder, the defendant must be acquitted. There is no propriety in considering a question which does not arise. But I perceive no good reason, if it be actually a subsisting offence, why it should not be included in the felonious charge, and why the jury may not find such a verdict specially, as at common law they might, on a charge of murder, find manslaughter, or homicide in self defence, or by chance medley. These last, although not felony, were regarded as offences, and created a forfeiture of goods. The defendant was obliged to purchase a pardon and discharge, by paying a fine to the king.— There is an advantage in the practice now established. It relieves the Solicitor of the responsibility of deciding before hand for what offence he will indict; it prevents the danger and delay of several trials; is really beneficial to the accused in enlarging his privileges, if the inferior offence be only a misdemeanor* which we *437 by no means intend to say; and if indicted for the murder and found guilty of the other offence, or acquitted, the verdict is a bar to any future prosecution; whereas it would be otherwise if indicted only for the inferior offence. The court is of opinion that the finding is a good verdict, under the second section of the act for killing in sudden heat and passion, and that the defendant must have judgment for that offence.
Gregg & Desaussure, for the motion.
Edwards, Solicitor, contra.
O’Neall, Richardson, Butler and Evans, Justices, concurred.